IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARTIN P. SHEEHAN, Trustee of
the Bankruptcy Estate of AGS, Inc.,

            Plaintiff,

v.                              //   CIVIL ACTION NO. 1:11CV163
                                     (Judge Keeley)

ALLEN G. SAOUD, FRED D. SCOTT,
WEST VIRGINIA DERMATOLOGY
ASSOCIATES, INC., and CENTRAL
WEST VIRGINIA DERMATOLOGY
ASSOCIATES, INC.,

            Defendants.


MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

Pending before the Court are motions for summary judgment
filed by the defendant, Fred D. Scott ("Scott") (Dkt. No. 89), and
the plaintiff, Martin P. Sheehan, as Trustee of the bankruptcy
estate of AGS, Inc. ("Sheehan" or "the Trustee") (Dkt. No. 91).
For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN
PART** Scott's motion, and **DENIES** Sheehan's motion.

I. BACKGROUND

This case concerns the right of Sheehan, as Trustee, to
recover funds he contends are rightfully owed to the bankruptcy
estate of AGS, Inc ("AGS"). The questions presented in Scott's
motion for summary judgment include (1) whether the claims asserted
against him by Sheehan and co-defendant Allen G. Saoud ("Saoud")

## MEMORANDUM OPINION AND ORDER GRANTING IN PART
## AND DENYING IN PART DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

are barred by collateral estoppel, and (2) whether he can be held personally liable for two contracts he executed in his capacity as director of co-defendant Central West Virginia Dermatology Associates, Inc. ("CWVD"). The question presented in Sheehan's motion for summary judgment is whether, as Trustee for AGS, he is entitled to judgment against Saoud.

## A.    Factual Background[1]

Saoud was a licensed Doctor of Osteopathic Medicine, specializing in dermatology, who owned and operated a medical corporation named AGS, a participating provider in the Medicare and Medicaid programs.[2] In 2001, Scott entered into the practice of dermatology with Saoud at AGS.

On January 25, 2005, the United States filed charges alleging that, between May 1998 and June 2004, Saoud had submitted unsupported medical billing claims to Medicare and Medicaid for payment. Saoud entered into a settlement with the United States on

---

[1] Many of these facts come from Saoud's criminal indictment and subsequent jury verdict in Case No. 1:12CR113. His conviction and sentence were affirmed on appeal in United States v. Saoud, 2014 WL 7210734 at *1 (4th Cir. Dec. 19, 2014).

[2] Saoud's license was suspended on May 26, 2011, and eventually revoked on January 6, 2014.

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

August 11, 2005, the terms of which required him to pay $310,800.58
in penalties, but did not require that he admit liability.    Of
importance, as part of that settlement, Saoud agreed to his
exclusion from Medicare and Medicaid, and all other federal health
programs, for ten years ("the exclusion agreement").

### 1.   CWVD and AGS

Saoud's exclusion agreement prohibited him from controlling
any medical practice that billed Medicare or Medicaid.[3]  Two weeks
after signing that exclusion agreement, on August 26, 2005, Saoud
"sold" his stock in CWVD, a medical corporation formed by him on
May 31, 2005, to its sole director, Scott, for $ 1.6 million.[4]
Scott, however, never paid Saoud for the stock.   Also on August
26th, Saoud resigned as President of CWVD, and, at least on paper,
transferred his staff and patients from AGS to CWVD.  Nevertheless,
despite this transfer and the terms of the exclusion agreement,

---

[3] "Control" includes directly or indirectly owning at least a
5% interest in a company, or acting as an "officer, director,
agent, or managing employee."  42 C.F.R. § 2003.102(b)(12).

[4] CWVD was not an operational medical practice prior to August
2005.

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

Saoud continued to exercise control over CWVD after August 26, 2005.

Although AGS had been left bereft of any patients or staff following their transfer to CWVD, Saoud "sold" AGS to Georgia Daniel ("Daniel") on March 31, 2006, for $1 million.[5]  Daniel, a nurse practitioner, previously had worked with Saoud in his dermatology practice.  Shortly after that, in April 2006, Saoud drafted a laboratory contract in which Daniel, as President of AGS, purportedly agreed to sell the histopathology portion of AGS's practice to CWVD for $1 million.  Scott signed that contract in his capacity as director of CWVD.

More than two years later, Saoud prepared a purchase agreement, in October 2008, that purported to transfer ownership of CWVD from Scott to Daniel.  Then, in March 2009, Saoud prepared a second purchase agreement that purported to transfer CWVD from Daniel to Dr. Timothy Peasak.  After Scott resigned as director of CWVD in June 2009, Saoud solicited Dr. Frank Swisher ("Swisher"), a family practice physician, to act as director of CWVD's

---

[5] West Virginia law prohibits a nurse practitioner from owning a medical corporation.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

laboratory.  Importantly, he never advised Swisher that Swisher's name and provider number would be used for billing, or that CWVD's laboratory would bill Medicare, Medicaid, and other federal health care programs, for dermatological pathology services that were in actuality performed by another lab.

### 2.  Bankruptcy of AGS

In an effort to avoid a civil law suit against AGS by Mountain State Blue Cross/Blue Shield over alleged overbilling, Saoud filed a bankruptcy petition on behalf of AGS on May 9, 2009.  Following that filing, the Bankruptcy Court appointed Sheehan as Trustee with the independent duty to pursue claims on behalf of AGS.

Saoud initially identified himself in the bankruptcy petition as President and Owner of AGS.  At a meeting of AGS' creditors convened on June 18, 2009, however, Saoud disclosed that he previously had sold his stock in AGS to Daniel.  Then, on August 18, 2009, he admitted that he was neither an owner nor an officer of AGS at the time he signed the bankruptcy petition. Later, on May 12, 2010, he claimed that Daniel had authorized him to file AGS' bankruptcy petition.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

For her part, Daniel has denied that she ever authorized Saoud to seek bankruptcy relief on behalf of AGS. Further, she contended that Saoud had forged her signature on a document purporting to authorize him to file the bankruptcy petition.[6]

### 3. Criminal Prosecution of Saoud

In December 2012, a federal grand jury returned a twenty-three count indictment charging Saoud with health care fraud, concealing a material fact in a health care matter, corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws, making a false oath or account in relation to a bankruptcy case, and making a false statement to a federal agent. In May 2013, the grand jury returned a superseding indictment containing no additional offenses. Then, on June 4, 2013, the grand jury returned a second superseding indictment, which added new charges of health care fraud and aggravated identity theft.

Following a jury trial, on June 25, 2013, Saoud was convicted of thirteen counts of health care fraud, one count of aggravated identity theft, one count of concealing a material fact in a health

---

[6] At trial, Saoud was acquitted of one count of falsification of bankruptcy documents.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

care matter, one count of corruptly endeavoring to obstruct and impede the due administration of internal revenue laws, five counts of making a false oath or account in relation to a bankruptcy case, and one count of making a false statement to a federal agent.[7]  On March 25, 2014, he was sentenced to 99 months of incarceration, and received a fine of $ 2,630,000.00.  His sentence also included a forfeiture money judgment of $ 1,243,118.29.  The United States Court of Appeals for the Fourth Circuit affirmed Saoud's convictions in December 2014.  See United States v. Saoud, 2014 WL 7210734 at *1 (4th Cir. Dec. 19, 2014).

**B.    Procedural Background**

On October 13, 2011, in his capacity as Trustee of AGS, Sheehan sued Saoud, Scott, CWVD, Daniel, and Robert R. Fraser ("Fraser"),[8] under federal bankruptcy law and the West Virginia Uniform Fraudulent Transfers Act ("the WVUFTA"), W. Va. Code § 40-

---

[7] The jury acquitted Saoud of one count of making and subscribing a false tax return, one count of aiding and assisting in the presentation of a false and fraudulent return, one count of falsification of bankruptcy documents, and five counts of bankruptcy fraud.

[8] Fraser is an accountant who had prepared tax returns for Daniel and CWVD.

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

1A-1, *et seq*. (Dkt. No. 3).   Scott in turn filed a crossclaim
against Saoud (Dkt. No. 19).   Eventually, Daniel and Fraser settled
with Sheehan, and were dismissed as defendants on May 15, 2012
(Dkt. No. 37).   Saoud filed a motion to dismiss both the complaint
and Scott's cross-claim against him, but subsequently withdrew
those motions (Dkt. No. 48).   Saoud then answered the complaint and
asserted a crossclaim against Scott (Dkt. No. 55).

On June 1, 2012, the Court referred the case to the Honorable
Patrick M. Flatley, United States Bankruptcy Judge, for a report
and recommendation (Dkt. No. 40).   Due to his earlier involvement
in the AGS bankruptcy petition, however, Judge Flatley could not
consider the case (Dkt. No. 44), and the Court withdrew the
reference.   The United States moved to intervene (Dkt. No. 71) on
June 5, 2013, seeking to stay the civil case until after the
conclusion of Saoud's criminal case.   The Court denied that motion
as moot on July 2, 2013, following Saoud's convictions at the
conclusion of his criminal trial (Dkt. No. 76).

On October 6, 2014, Sheehan filed an amended complaint against
Saoud, Scott, and CWVD (Dkt. No. 86), alleging that CWVD still owed
$634,159.00 to AGS based on the sale of AGS' laboratory to CWVD for

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

$1 million. (Count I). Id. at 9. He also alleged 1) that the transfers of ownership among Saoud, Daniel, and Scott "constituted a scheme to defraud the creditors of AGS, Inc.," and thus were voidable as a fraudulent transfer under 11 U.S.C. § 547 (Count II); 2) that the transfers of ownership were voidable as fraudulent transfers under the WVUFTA (Count III); 3) that the fraudulent transfers "constituted a conspiracy to violate" the WVUFTA (Count IV); and 4) that Saoud committed bankruptcy fraud and "conducted a criminal enterprise engage(sic) in, and whose activities, affect interstate commerce" in violation of 18 U.S.C. § 1962, and that Saoud is liable for attorneys' fees and treble damages (Count VI[9]). Id. at 9-10.

Scott answered the amended complaint on October 8, 2014 (Dkt. No. 87), followed by Saoud, who filed his answer on October 10, 2014 (Dkt. No. 88). With his answer, Saoud refiled his crossclaim against Scott stemming from the sale of Saoud's shares in CWVD (Dkt. No. 88 at 8). Saoud alleged that Scott had breached his contract by failing to pay the $1,600,000 purchase price, and that

---

[9] Although Sheehan amended the complaint, he left Count V, which only relates to Fraser, intact. Fraser was dismissed from the case, so the Court **DISMISSES** Count V as moot.

9

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

he also had breached his duty of good faith and fair dealing by never intending to repay the purchase price. Id. at 8-9.

On October 20, 2014, Scott moved for summary judgment on both the complaint and Saoud's crossclaim (Dkt. No. 89), and Sheehan sought summary judgment against Saoud (Dkt. No. 91). Both of these motions are fully briefed, and the matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(1)(A), (a). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. <u>Id.</u> at 248–52.

### III. DISCUSSION

**A.  Scott's Motion for Summary Judgment as to Sheehan's Amended Complaint**

Scott seeks summary judgment on all the claims alleged against him in Sheehan's amended complaint (Dkt. No. 89). Before the Court can address his motion, however, it must determine which counts in the amended complaint actually relate to Scott. As Scott points out in his motion, Count I, by its terms, only applies to CWVD (Dkt. No. 86 at 9). Count V applies only to Fraser, and Count VI

11

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

applies exclusively to Saoud. Therefore, in reviewing Scott's motion, the Court will consider only Counts II, III, and IV.

Scott premises his motion for summary judgment on two principal arguments. First, he contends that AGS' claims are barred by collateral estoppel. Next, he asserts that, because any documents he signed were signed in his capacity as director of CWVD, he is not personally liable as a matter of law (Dkt. No. 90 at 7). In its consideration of Scott's motion, the Court will review all the evidence "in the light most favorable" to Sheehan, the non-moving party, <u>Providence Square Assocs., L.L.C.</u>, 211 F.3d at 850.

### 1.   Counts II and III:  Voidable Transactions

In Counts II and III of the amended complaint, Sheehan alleges that Saoud, Daniel, and Scott schemed to defraud creditors by transferring AGS' assets for less than reasonably equivalent value, thus causing AGS to become insolvent (Dkt. No. 86 at 9-10). Transfers for less than reasonably equivalent value are generally voidable as fraudulent transfers under 11 U.S.C. § 547, and W. Va. Code § 40-1A-1 *et seq*.   <u>Id.</u>

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

Sheehan also asserts that, although Scott agreed to purchase Saoud's interest in CWVD for $ 1.6 million, he never paid any money to Saoud because the scheme was intended as a leveraged buy-out whereby CWVD would pay Saoud and Scott would become the owner of CWVD (Id. at 4; Dkt. No. 93 at 6). The amended complaint also alleges that Scott signed the laboratory purchase agreement on behalf of CWVD, thereby indebting CWVD to AGS for $ 1 million (Dkt. No. 86 at 5).[10]

11 U.S.C. § 547 of the Bankruptcy Code generally allows Sheehan, as Trustee, to "avoid any transfer of an interest" of AGS made "to or for the benefit of a creditor" for payment of "an antecedent debt owed by the debtor," so long as the transfer was made while the debtor was insolvent, and within 90 days before the filing of the bankruptcy petition. 11 U.S.C. § 547(b).

The WVUFTA is a state statute that allows creditors to negate a debtor's fraudulent transactions by avoiding transfers or obligations, attaching assets, enjoining further disposition of property, or appointing a receiver to take charge of assets. W.

---

[10] This allegation is also the basis for Count I, where Sheehan claims that CWVD still owes AGS $634,159.00 on the purchase price of the contract (Dkt. No. 86 at 9).

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

Va. Code § 40-1A-7(a). If a debtor such as AGS transfers property or incurs obligations, either with the "actual intent to hinder, delay or defraud any creditor," or without receiving "reasonably equivalent value" for the transfer, and the debtor's remaining assets "were unreasonably small in relation to the business or transaction" or if it intended to incur debts beyond its ability to pay, the transfer is fraudulent as to a creditor. W. Va. Code § 40-1A-4(a).

As best the Court can tell, Sheehan seeks to void Saoud's transfer of AGS' laboratory to CWVD for $1 million as a transfer "for less than reasonably equivalent value" under W. Va. Code § 40-1A-4(b)(8). The amended complaint alleges that Saoud's transfer caused AGS to become insolvent, to have unreasonably small capital, and to incur debts beyond its ability to pay (Dkt. No. 86 at 9-10).

In response to Scott's motion for summary judgment, Sheehan contends that Scott exercised "dominion and control" over CWVD's assets, aside from his role as CWVD's president and owner (Dkt. No. 93 at 6-7). In support of his contention, Sheehan asserts that Scott withdrew $26,000 from a company bank account and kept the funds. Id. at 7; Dkt. No. 94-4; Dkt. No. 94-1 at 47.

14

## MEMORANDUM OPINION AND ORDER GRANTING IN PART
## AND DENYING IN PART DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

Putting two and two together, it appears that Sheehan, on behalf of AGS, seeks to hold Scott personally liable and recoup assets of CWVD over which Scott allegedly exercised dominion and control. In his response, Scott argues that AGS is collaterally estopped from asserting claims against him because it is in privity with Saoud, who has already been adjudged guilty (Dkt. No. 101 at 6).

As an initial matter, there are sufficient facts in dispute to create a question of material fact concerning whether Scott was a participant in the fraudulent transfers that dissipated AGS' assets, as Sheehan contends, or whether, as Scott asserts, he was a victim of Saoud's criminal conduct. (Dkt. No. 101 at 6).

As a general legal principle, when a criminal conviction is based on a guilty verdict, "'issues which were essential to the verdict must be regarded as having been determined by the judgment.'" Wolfson v. Baker, 623 F.2d 1074, 1078 (5th Cir. 1980) (quoting Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 569, 71 S.Ct. 408, 414 (1951)). Here, the jury did not "find" Scott to be a victim. In paragraph 16 of the second superseding indictment, the United States charged that Saoud had established

15

## MEMORANDUM OPINION AND ORDER GRANTING IN PART
## AND DENYING IN PART DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

CWVD and transferred ownership of it to Scott (Dkt. No. 90-3 at 5). Despite the purchase price of $1.6 million, it is undisputed that Saoud never received any payment from Scott for that transfer. <u>Id.</u> Scott's status–whether as a victim or otherwise–was not "essential to the verdict;" nor was it decided by the jury in any way. As to the five counts of health care fraud on which the jury convicted Saoud, Scott was only listed in Count One, which charged, among other matters, that Saoud had requested Scott to sign a document that included false and misleading statements about CWVD's financial obligations to AGS, and Saoud's managerial interest in CWVD. <u>Id.</u> at 7.

The Court is unable to glean Scott's interpretation–that the jury "found" he was a victim–from either the plain language of the indictment or the jury's verdict. Moreover, Scott never sought restitution from Saoud in the criminal case (Case No. 1:12CR113, Dkt. No. 197).[11] Therefore, whether Scott participated in the

---

[11] In contrast, Daniel settled with Sheehan and then sought restitution from Saoud in the criminal suit, which the Court granted. She was awarded $99,750 in restitution for attorneys' fees and settlement fees related to this proceeding (Case No. 1:12CR113, Dkt. No. 193).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

fraudulent transfers with the requisite intent,[12] and possessed assets rightfully belonging to AGS, or whether he was in fact a victim of Saoud's criminal scheme, are material factual questions that remain in dispute.

Scott also is not entitled to judgment on the basis that Sheehan's claims are barred by collateral estoppel because Saoud's conduct is personally attributable to AGS (Dkt. No. 90 at 13). Collateral estoppel is a doctrine that precludes relitigation of an issue. "[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973 (1979).

A party seeking to rely on collateral estoppel must establish five elements: (1) that the issue previously decided is identical to the issue in the current action; (2) that the issue was actually determined in the previous proceeding; (3) that the determination

---

[12] The Court is well aware that the federal bankruptcy statute does not necessarily require proof of the debtor's intent if he "received less than a reasonably equivalent value in exchange for such transfer or obligation . . . ." 11 U.S.C. § 548(a)(1)(B)(I). It is unclear, however, which avenue Sheehan is choosing to pursue.

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

of the issue was "a critical and necessary part of the decision in the prior proceeding; (4) that the prior judgment is final and valid;" and, "(5) that the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue" in the prior case. Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir. 2006) (internal citations omitted).

Collateral estoppel generally applies only against persons who were parties to a previous suit, because nonparties usually would not have had a full and fair opportunity to litigate the issues. Virginia Hosp. Ass'n v. Baliles, 830 F.2d 1308, 1312 (4th Cir. 1987). In some instances, however, a nonparty to a previous suit may be "collaterally estopped by the judgment rendered in that suit if (1) the person had a direct financial or proprietary interest in the prior litigation; and (2) the person assumed control over the prior litigation." Virginia Hosp. Ass'n, 830 F.2d at 1312.

When an issue is decided in a criminal action and collateral estoppel is asserted in a later civil action, a court must ask "whether the issue for which estoppel is sought was 'distinctly put in issue and directly determined' in the criminal action." Wolfson, 623 F.2d at 1078 (quoting Emich Motors Corp., 340 U.S. at

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

569, 71 S.Ct. at 414).  When a criminal conviction is based on a guilty verdict, "'issues which were essential to the verdict must be regarded as having been determined by the judgment.'" Id.

The Court agrees with Scott that Saoud's criminal judgment is valid and final.  Berman v. United States, 302 U.S. 211, 212, 58 S.Ct. 164, 166 (1937) ("Final judgment in a criminal case means sentence.  The sentence is the judgment.").  It also agrees that the general issues in Saoud's criminal trial, namely, the contracts between Saoud, on behalf of AGS, and Scott, on behalf of CWVD, were the same (Dkt. No. 90-3 at 5).  It cannot agree, however, that the relevant issue here is the exact one decided in Saoud's criminal case.  Although Saoud's culpability in structuring fraudulent transfers was at issue in that case, Scott's role in those transactions, particularly whether he possessed the requisite actual intent under W. Va. Code § 40-1A-4, was not.

In any event, because AGS was not a party in Saoud's criminal case, it never had a full and fair opportunity to litigate these issues.  United States v. Alcatel-Lucent France, SA, 688 F.3d 1301,

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

1306 (11th Cir. 2001) (noting that victims are non-parties).[13]  As
Sheehan points out, the government had no incentive to present AGS
as an honest corporate citizen freed from Saoud's domination by the
bankruptcy proceedings (Dkt. No. 93 at 5).   Rather, Sheehan
contends, it made sense for the government to portray AGS "as the
instrument of illegality being used by defendant Saoud."   Id.
Thus, even if material facts regarding Scott's intent and role were
not in dispute, he would not be entitled to judgment as a matter of
law because AGS never had a full and fair opportunity to litigate
its claims against him.  The Court therefore **DENIES** Scott's motion
for summary judgment as to **Counts II and III.**

### 2.   Count IV:  Civil Conspiracy

In Count IV, Sheehan alleges that the agreements between
Saoud, Daniel, and Scott "constituted a conspiracy to violate" the
WVUFTA, "and are actionable under principals [sic] of West Virginia
common law. . . ."   (Dkt. No. 86 at 10).   Scott asserts that
Sheehan's civil conspiracy claim fails as a matter of law because

---

[13] Sheehan portrays AGS as a "victim" in the criminal case
(Dkt. No. 93 at 2).  The Court reminds him, however, that it denied
restitution to AGS after Saoud's criminal trial, a decision later
affirmed by the Fourth Circuit.  See In re Bankruptcy Estate of
AGS, Inc., 565 Fed. Appx. 172 (4th Cir. 2014) (unpublished).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

a valid claim requires an underlying tort (Dkt. No. 101 at 2).  He asserts that, because "the only factual allegation in the Amended Complaint directed toward [him] alleges that either Dr. Scott or CWVD purchased a laboratory for $1,000,000 and failed to pay the purchase price . . . [,] [t]he allegations clearly state a contract claim."  <u>Id.</u>

There is no dispute that West Virginia recognizes a cause of action for civil conspiracy.  <u>Kessel v. Leavitt</u>, 511 S.E.2d 720, 753 (W. Va. 1998).  A civil conspiracy is defined as "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means."  <u>Dunn v. Rockwell</u>, 689 S.E.2d 255, 268 (W. Va. 2009) (quoting <u>Dixon v. American Indus. Leasing Co.</u>, 253 S.E.2d 150, 152 (W. Va. 1979)).

Importantly, "[t]he cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff."  <u>Id.</u>  Thus, civil conspiracy is not a stand alone cause of action, but "a legal doctrine under which liability for a tort may be imposed on people who did not actually

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." Id. at 269.

Courts in West Virginia, including this one, have granted summary judgment as to claims of civil conspiracy where there is no underlying tort to support the claim. See, e.g., Long v. M&M Transp., LLC, __ F.Supp.2d ___, 2014 WL 4388337 at *13 (N.D.W. Va. Sept. 5, 2014)(Groh, J.). In addition, a court should grant a motion to dismiss a civil conspiracy charge when the plaintiffs claim that the defendants "engaged in a civil conspiracy" and "individually and collectively" committed wrongs, but fail to allege facts to support that allegation. Tucker v. Thomas, 853 F.Supp.2d 576, 594 (N.D.W. Va. 2012)(Stamp, J.).

As to Sheehan's allegation that Saoud, Daniel, and Scott conspired to violate the WVUFTA (Dkt. No. 86 at 9-11), case law in West Virginia is bereft of guidance as to whether such a claim sounds in contract or tort. Nevertheless, courts in other states that, like West Virginia, have adopted the Uniform Fraudulent Transfers Act have held that a violation of a state's enactment of the act is not a tort. See, e.g., F.D.I.C. v. S. Prawer & Co., 829 F.Supp.2d 453, 455 (D. Ma. 1993) ("The Court is satisfied that

22

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

violation of . . . Maine's Uniform Fraudulent Transfers Act . . .
is not a tort . . . although there appears to be a tort of
fraudulent concealment in Maine, it has not been alleged in this
complaint.").

In S. Prawer, the district court in Maine listed other courts
that "have persuasively concluded that actions to set aside
fraudulent conveyances under the Uniform Fraudulent Conveyance Act
are in the nature of contract rather than tort actions." Id.
(citing cases). Additionally, it observed that "[t]he fact that
the complaint alleged actual intent on the part of the debtor to
evade the creditor did not transform the complaint into an action
to recover on the ground of actual fraud." Id. (quoting United
States v. Franklin Nat'l Bank, 376 F.Supp. 378, 382 (E.D.N.Y.
1973)).

Following a careful weighing of the matter, the Court agrees
with Scott that a violation of the WVUFTA sounds in contract; thus,
Sheehan, by having relied on the WVUFTA, has failed to plead a
tort. Moreover, even if he had pleaded a tort by alleging a
violation of the WVUFTA, Sheehan's factual allegations are wholly
inadequate regarding "how and when the defendants engaged in civil

23

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

conspiracy." Tucker v. Thomas, 2011 WL 1119661 at *13 (N.D.W. Va. Mar. 24, 2011); Acadian Energy Resources, LLC v. Carpenter, 2009 WL 5217679 at *7-9 (S.D.W. Va. Dec. 31, 2009) (dismissing plaintiff's civil conspiracy claim without prejudice when it contained conclusory allegations regarding a conspiracy to defraud).

Sheehan's problem is that there simply is no evidence in the record to support a civil conspiracy claim against Scott. Merely alleging that Scott was part of "a conspiracy" to violate the WVUFTA because he signed two contacts on behalf of CWVD is wholly inadequate (Dkt. No. 86 at 10). A close examination of the remainder of the amended complaint, as well as of the depositions and other materials submitted by Sheehan and Scott for review on summary judgment, leaves the Court none the wiser as to any of the details of the alleged conspiracy, particularly "how and when" the defendants engaged in it. Tucker, 2011 WL 1119661 at *13. Therefore, based on the absence of any disputed material facts, and the conclusion that a violation of the WVUFTA does not sound in tort for purposes of establishing a civil conspiracy claim, the Court **GRANTS** Scott's motion for summary judgment as to **Count IV.**

24

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

**B.   Scott's Motion for Summary Judgment As To Saoud's Crossclaim**

Saoud's crossclaim against Scott for $1,600,000 stems from the contract between Saoud and CWVD (Dkt. No. 88 at 7).  Saoud claims that Scott "was to begin making payments starting March 1, 2006," but "failed to make any payment on the note as agreed" and "failed to use best efforts in keeping the corporation functioning properly and syphoned off cash for his own use rather than paying defendant Saoud as provided in the agreement."  <u>Id.</u>  Saoud also alleges that Scott never intended to repay him.   <u>Id.</u>   Saoud's crossclaim includes two counts.  The first asserts a breach of contract claim; the second alleges a breach of the duty of good faith and fair dealing.  <u>Id.</u> at 8-9.

Scott's motion is premised on collateral estoppel, as well as the lack of any personal liability under the contract (Dkt. Nos. 89, 90).  Saoud, in response, argues that 1) the jury acquitted him of bankruptcy fraud in his criminal trial; 2) Scott's conduct was not litigated during his criminal trial; and 3) questions of material fact are in dispute as to whether Scott personally

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

benefitted from any of the transactions (Dkt. No. 96 at 2-4).[14]

Again, the Court reviews all the evidence "in the light most

favorable" to Saoud, the non-moving party.  See Providence Square

Assocs., L.L.C., 211 F.3d at 850.

### 1.   Collateral Estoppel

The Court need not reiterate the legal principles governing

collateral estoppel discussed earlier.  Suffice it to say that, for

many of those same reasons, Scott's argument that collateral

estoppel bars Saoud's crossclaim fails.

Saoud's criminal judgment is valid and final,  Berman, 302

U.S. at 212, 58 S.Ct. at 166, and the general issues tried in his

criminal case, including the contract between Saoud on behalf of

AGS and Scott on behalf of CWVD, were the same (Dkt. No. 90-3 at

5).  Notably, however, the issues presented here are not identical

to those decided in Saoud's criminal case.  Moreover, it bears

---

[14] Saoud also argues that his criminal conviction is not final,
because he appealed it to the Fourth Circuit.  However, since he
filed his response brief on November 10, 2014, the Fourth Circuit
has affirmed his conviction and sentence.  See United States v.
Saoud, 2014 WL 7210734 at *1 (4th Cir. Dec. 19, 2014).  In any
event, Saoud's conviction was final at sentencing.  Berman, 302
U.S. at 212, 58 S.Ct. at 166.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

repeating that, although Saoud's culpability in structuring fraudulent transfers was certainly on trial in his criminal case, Scott's role, if any, in those transactions was not. The jury convicted Saoud of the charges in Counts 1-5, including that he "purportedly transferred ownership of CWVD to [Scott] . . ." for $ 1.6 million, but did not receive any payment (Dkt. No. 90-3 at 5).

As to Scott's liability for breach of the duty of good faith and fair dealing, Saoud must establish that Scott impliedly breached the contract with Saoud by acting with bad motives or intentions.[15] John Bourdeau, et. al., Breach of Implied Terms § 764, Corpus Juris Secundum, 17B C.J.S. Contracts § 764 (2014). Scott's intentions or mental state, clearly in dispute here, certainly were never decided in Saoud's trial.

Furthermore, Saoud's assertion that, based on the language in the counts on which he was acquitted, the jury must have believed Scott agreed to purchase CWVD, thus conclusively establishing Scott's liability on the contract, is unavailing (Dkt. No. 96 at

---

[15] Breach of the duty of good faith and fair dealing is not a stand alone cause of action in West Virginia; instead, it sounds in breach of contract. Gaddy Engineering Co. v. Bowles Rice McDavid Graff & Love, LLP, 746 S.E.2d 568, 587 (W. Va. 2013).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

3). As Scott correctly observes, for collateral estoppel purposes, "[a] not guilty verdict is not the same as an innocence verdict." (Dkt. No. 100 at 4). See Dowling v. United States, 493 U.S. 342, 349-50, 110 S.Ct. 668, 672-73 (1990).

That the jury acquitted Saoud of Counts 19, 22, 24, 25, 29, and 31,[16] out of a total of 32 counts, does not establish whether the jury conclusively determined that Saoud's account of those events was accurate. Rather, the jury failed to find that sufficient evidence existed to convict Saoud of those crimes beyond a reasonable doubt. "[The acquittal did] not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt . . . . [T]he jury verdict in the criminal action did not negate the possibility that a preponderance of the evidence could show that [the defendant] was engaged in [the conduct charged in the Indictment]. . . ." Dowling, 493 U.S. at 349-50, 110 S.Ct. at 672-73 (1990) (quoting United States v. One Assortment of 89 Firearms, 465 U.S. 354, 361-62, 104 S.Ct. 1099, 1104 (1984)). "The Courts of Appeals have unanimously placed the

---

[16] These counts related to Saoud's allegedly false testimony regarding his sale of AGS to Daniel and CWVD to Scott.

28

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

burden on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." Id. (listing cases). Thus, a genuine dispute of material fact exists regarding Scott's culpability as to, and liability based upon, his contracts with Saoud.

To sum up, the exact issue presented here was not litigated during Saoud's criminal trial. Moreover, there are material facts in dispute regarding 1) whether Scott personally benefitted from the contract when CWVD purchased Saoud's shares for $1.6 million, and 2) whether he breached a contract with Saoud.

### 2.    Scott's Personal Liability on the Contract

Scott further argues that, even though he signed the contract to purchase Saoud's shares, he cannot be held personally liable because he signed only in his capacity as a director of CWVD (Dkt. No. 90 at 4-5). In support of his argument, Scott attached to his summary judgment motion both the laboratory contract, and also the purchase contract for Saoud's shares in CWVD (Dkt. No. 90-4 and 90-5).

For his part, Saoud reiterates his argument about the effect of his acquittal on the bankruptcy fraud charges in the criminal

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

case. However, he never squarely addresses Scott's argument that he is not personally liable on the contract.

As an initial matter, it is unclear whether Sheehan's amended complaint actually seeks to impose personal liability on Scott.[17] It appears that, as Trustee, Sheehan's goal has been to void the series of transactions that culminated in the sale of AGS' laboratory to CWVD, and the sale of Saoud's stock to CWVD.

Because CWVD never made a payment on the $1.6 million debt it allegedly owed to Saoud, Sheehan would not be in a position to recover any of that money from it. Therefore, any argument that Scott may be obligated to pay back part of that money appears far-fetched. Scott, nevertheless, remains concerned by the specter of personal liability, and seeks summary judgment to curtail that possibility.

Any consideration of this issue must begin with reference to the language of the contract, which reads as follows:

> The directors of Central West Virginia Dermatology Associates, Inc., a West Virginia corporation, consent to the following:

---

[17] In Sheehan's motion for summary judgment against Saoud, he lists certain enumerated "damages," but damages from Scott are not mentioned (Dkt. No. 91 at 10).

30

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

Agree to purchase from Allen G. Saoud D.O. all of his outstanding shares of Central West Virginia Dermatology Associates Inc. (100) shares for One million six hundred thousand dollars ($1,600,000.00) which is 50% of the gross annual income. Payments are to be made starting March 1, 2006 and will continue in equal installments until February 28, 2011. Purchase price will accumulate interest at the prime rate until payoff of the note.

Dated: 4.26.2005
By: /s/ Fred D. Scott D.O.
Director, Central West Virginia Dermatology
Associates Inc.

(Dkt. No. 90-5). The contract is notarized in the bottom right corner.[18] Id. It is clear from the contract's language that Scott did not execute a personal guarantee. It is equally clear, however, that, as the sole director and shareholder of CWVD, he directly benefitted from the stock purchase.

Generally, an officer or director of a corporation is not personally liable for the debts and obligations of the corporation, particularly when signing a contract solely as director or officer of the corporation. See W. Va. Code § 31D-8-831(a).[19] Directors

---

[18] Scott later testified that he hadn't read the contract before he signed it (Dkt. No. 94-1 at 19, 28, 36).

[19] Under West Virginia law, piercing the corporate veil is another possible basis for a director's personal liability. In certain extraordinary circumstances, courts will "pierce the

## MEMORANDUM OPINION AND ORDER GRANTING IN PART
## AND DENYING IN PART DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

and officers may incur personal liability, however, if they fail to act in good faith, with due care, and in the best interests of the corporation while performing their official duties. W. Va. Code § 31D-8-842(a).

A director may be held liable if a plaintiff can establish that: (1) provisions in the corporation's articles of incorporation do not bar director liability; and, (2) the director's challenged conduct was the result of (a) an action not in good faith, (b) a decision the director did not reasonably believe to be in the best interests of the corporation, (c) a decision as to which the director was not reasonably informed, (d) a lack of objectivity due to the director's domination and control by another person who has a material interest in the conduct, (e) the director's failure to devote sufficient attention to the affairs of the corporation, or

---

corporate veil" and impose liability on a corporate officer. <u>See S.E.C. v. Woolf</u>, 835 F.Supp.2d 111, 123 (E.D. Va. 2011). Courts assess several factors when determining whether to pierce a corporate veil, including: inadequate capital structures, whether personal and corporate funds have been commingled, siphoning funds from one corporation to another, a unity of interest and ownership, and total dominance and control of one corporation by a shareholder. <u>S. Elec. Supply Co. v. Raleigh Cty. Nat'l Bank</u>, 320 S.E.2d 515, 523 (W. Va. 1984). Sheehan , however, has not advanced a piercing the corporate veil theory to establish liability against Scott.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

(f) the director's receipt of a financial benefit to which he was not entitled, or any other breach of his duties. W. Va. Code § 31D-8-831(a)(2). Furthermore, a person seeking to hold a director liable for money damages must establish that the corporation has suffered harm that was proximately caused by the director's challenged conduct. W. Va. Code § 31D-8-831(b).

Scott is not entitled to summary judgment on Saoud's crossclaim for several reasons. In the first place, it is unclear from the pleadings and briefing whether Sheehan's amended complaint actually seeks to impose personal liability on Scott. Even if it does, questions of fact abound as to whether Scott acted in good faith, was dominated by Saoud, and benefitted personally, in breach of the duty he owed to CWVD. W. Va. Code § 31D-8-831(b).

Sheehan has proffered evidence that Scott intermingled corporate and personal funds (Dkt. No. 94-1 at 47-49), and aided Saoud in shifting funds from AGS to CWVD (Dkt. No. 94-1 at 12-13, 28-29, 39). Of course, Scott maintains that he emptied CWVD's bank account at Huntington Bank to keep the funds in escrow (Dkt. No. 94-1 at 49), and that he is a victim of Saoud's scheme to fraudulently bill Medicare and Medicaid. Ultimately, it is the

33

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

province of the jury, not this Court, to determine which facts are more credible. Therefore, the Court **DENIES** Scott's motion for summary judgment as to **Saoud's crossclaim**.

**C.   Sheehan's Motion for Summary Judgment Against Saoud**

Initially, it is unclear on which counts in his amended complaint Sheehan is seeking summary judgment against Saoud. As noted earlier, Count I refers only to CWVD, while Count V refers only to Fraser (Dkt. No. 86 at 9-10). Because Counts II, III, IV, and VI remain, and all apply to Saoud, the Court will address them first. Id. at 9-11.

Count II of the amended complaint alleges that Saoud, Daniel, and Scott perpetrated a scheme to defraud creditors of AGS by transferring its assets for less than reasonably equivalent value, thereby causing AGS to become insolvent, to have unreasonably small capital, and to incur debts beyond its ability to pay. Id. Sheehan seeks to void all transfers pursuant to "such agreements" as fraudulent transfers under 11 U.S.C. § 547. Id. at 10.

Count III of the amended complaint alleges that all transfers pursuant to the agreements between Saoud, Daniel, and Scott also are voidable as fraudulent transfers under the WVUFTA. Id. Count

34

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

IV alleges that the scheme to violate the WVUFTA constituted a civil conspiracy under West Virginia common law.  Id.

Finally, Count VI of the amended complaint alleges that "for the purpose of executing the scheme to defraud AGS, Inc., and to deprive it of its ability to pay its creditors, [Saoud] used the United States mail to receive mail, and to send mail and used interstate wire transmissions for the same purpose."  Id. at 11. It further alleges that Saoud "has committed bankruptcy fraud" and "has conducted a criminal enterprise engage in (sic), and whose activities, affect interstate commerce by conducting, participating in the conduct of such activities in violation of 18 U.S.C. § 1962."[20]  Finally, it alleges Saoud is liable under 18 U.S.C. § 1964, the remedies portion of the statute, for treble damages and attorneys' fees.  Id.  The Court reviews all the evidence in the light most favorable to Saoud, the non-moving party.  See Providence Square Assocs., L.L.C., 211 F.3d at 850.

---

[20] Section 1962, part of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), prohibits a person who derives income "from a pattern of racketeering activity or through collection of an unlawful debt" to use or invest that money in interstate commerce or to control any enterprise engaged in interstate commerce.  18 U.S.C. § 1962.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART
## AND DENYING IN PART DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

Without any contrary indication, one might assume that Sheehan seeks summary judgment on all counts naming Saoud. In his reply brief, however, Sheehan explains that he "did not move for summary judgment on Count VI." (Dkt. No. 99 at 5). Sheehan further explains that, although Fraser has been dismissed from the case for some time, he seeks joint and several liability from Saoud as a "co-conspirator" of Fraser "for damages caused by proof of Mr. Frazier's (sic) involvement in these schemes." Id. at 3-4.

Until now, Sheehan has never alleged that Saoud and Fraser were co-conspirators,[21] and the Court rejects the notion that he can inject such a theory at this late stage in the litigation. Therefore, it declines to consider Counts I, V, or VI,[22] and will look only to the state of the evidence as to Counts II, III, and IV.

---

[21] He advances a rather interesting theory that, because he has alleged that Saoud and Daniel were conspirators, Fraser is also now a co-conspirator in "a chain conspiracy with Ms. Daniel as the link." Dkt. No. 99 at 5.

[22] As discussed earlier, Count I refers only to CWVD. The Court has already dismissed Count V, and Sheehan does not move for summary judgment on Count VI.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

### 1.   Inadequacy of the Motion for Summary Judgment

At the outset, the Court is faced with the unenviable task of reminding Sheehan of his unfulfilled obligation as the movant to "identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file . . .' which [he] believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). Federal Rule of Civil Procedure 56(c)(1) requires that a party "asserting that a fact cannot be . . . genuinely disputed <u>must</u> support the assertion by citing to particular parts of materials in the record . . . ." Fed. R. Civ. Pro. 56(c)(1) (emphasis added).

Sheehan's motion fails to cite to the record for many material facts that he alleges are "undisputed." Therefore, following an initial review of the matter after it was fully briefed, the Court ordered Sheehan to refile his summary judgment motion and provide specific citations to the record for all undisputed material facts (Dkt. No. 102). Unfortunately, Sheehan never did so, despite having been given ample time.

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

In similar circumstances, courts have concluded that, on summary judgment, they are not required to consider anything other than properly cited material. United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)("Judges are not like pigs, hunting for truffles buried in briefs."). See, e.g., Porter v. Progressive Directions, Inc., 2011 WL 2471541 at *5, fn. 1 (M.D. Tenn. June 21, 2011)(stating that the court need not consider improperly cited facts); Stanford v. Nat'l Grange Ins. Co., 2014 WL 5527744 at *1, fn. 2 (E.D. Pa. Nov. 3, 2014) (deeming the movant's factual assertions as undisputed for purposes of the motion because the non-movant's response contained no citations to the record). In short, Sheehan was on notice that his motion was deficient, was given the opportunity to remedy that deficiency, but failed to do so.

Sheehan also has declined to advance a collateral estoppel argument, similar to Scott's, based on Saoud's criminal conviction (Dkt. No. 99 at 6). Rather, he asserts that Saoud's criminal case is "not material to the motion for summary judgment," and that he purposely "did not rely on [it] to establish any facts." Id. The Court, however, has already determined, that, because Saoud's

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

criminal conviction is final, any facts essential to the verdict can be considered in this civil action.

It is not the province of the Court to rewrite Sheehan's summary judgment motion, particularly when he has clearly stated he does not wish to rely on collateral estoppel. <u>Greenlaw v. United States</u>, 554 U.S. 237, 244, 128 S.Ct. 2559, 2564 (2008) (describing the party presentation principle, and explaining that courts rely on the parties to frame the issues for decision); <u>Castro v. United States</u>, 540 U.S. 375, 386, 124 S.Ct. 786 (2003) (explaining that courts "do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties." (internal citations omitted)). It, therefore, will address the arguments raised by Sheehan within the confines of the facts he did cite in his briefing.

**2. Count II: Fraudulent Transfer Pursuant to 11 U.S.C. § 547**

In Count II, Sheehan alleges that Saoud, Daniel, and Scott schemed to defraud AGS' creditors by transferring its assets for less than reasonably equivalent value, thus causing AGS to become insolvent, have unreasonably small capital, and incur debts beyond

39

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

its ability to pay (Dkt. No. 86 at 9-10). He seeks an order

voiding "[a]ll transfers pursuant to such agreements" under 11

U.S.C. § 547.

Section 547 provides that a trustee "may avoid any transfer of

an interest of the debtor in property" if the transfer is:

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the
debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made–
    (A) on or within 90 days before the date of the
    filing of the petition; or
    (B) between ninety days and one year before the
    date of the filing of the petition, if such
    creditor at the time of such transfer was an
    insider; and
(5) that enables such creditor to receive more than such
creditor would receive if–
    (A) the case were a case under chapter 7 of this
    title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to
    the extent provided by the provisions of this
    title.
11 U.S.C. § 547(b).

A trustee may not avoid transfers intended by the creditor to

"be a contemporaneous exchange for new value given to the debtor,"

and that were in fact a substantially contemporaneous exchange. 11

U.S.C. § 547(c)(1). A trustee also may not avoid a transfer the

40

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

debtor makes to pay a debt incurred in the ordinary course of business, so long as the transfer was actually made in the ordinary course of business, or made according to ordinary business terms. 11 U.S.C. § 547(c)(2).

As a preliminary matter, it is unclear which transfers Sheehan seeks to avoid. He merely "incorporates" all of the other paragraphs in the complaint, which include the following transfers: (1) Saoud's transfer of his interest in CWVD to Scott on August 26, 2005 (Dkt. No. 86 at 4); (2) Saoud's transfer of AGS to Daniel for $1 million on March 31, 2006 (<u>Id.</u> at 4-5); (3) Daniel's transfer of a laboratory from AGS to CWVD for $1 million on April 3, 2006 (<u>Id.</u> at 5); and (4) Saoud's transfer of real estate owned by AGS on March 18, 2005 (<u>Id.</u> at 4).

Pursuant to 11 U.S.C. § 547(e)(2), a transfer is "made" at any of several points in time: It may be made when it takes effect, so long as it is perfected; at the time it is perfected; or immediately before the filing of the petition. <u>Id.</u> A transfer also cannot be made unless the debtor has rights in the property transferred. 11 U.S.C. § 547(e)(3). A trustee can only avoid transfers made "on or within 90 days before the date of the filing

## MEMORANDUM OPINION AND ORDER GRANTING IN PART
## AND DENYING IN PART DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

of the petition," or, if the creditor is an insider, "between ninety days and one year before the date of the filing of the petition." 11 U.S.C. § 547(b)(4). In addition, the transfer must be made "while the debtor was insolvent." 11 U.S.C. § 547(b)(3). The debtor is presumed to be insolvent for the ninety days preceding the filing of the bankruptcy petition. 11 U.S.C. § 547(f).

It is undisputed that AGS filed for bankruptcy relief on May 9, 2009 (Dkt. No. 86 at 1). But the four transfers cited above occurred on dates ranging from March 18, 2005, at the earliest, to March 31, 2006, at the latest. There is no evidence that any of these transfers were not "made" within the meaning of the statute. Even given the one year grace period in § 547(b)(4), Sheehan can only avoid transfers dating back to May 9, 2008, which leaves the four contracts outside the range of the statute. Sheehan's failure to explain this anomaly, alone, requires the Court to deny his motion for summary judgment.[23]

---

[23] Sheehan pleaded in the amended complaint that Saoud, Daniel, and others "concealed and obstructed the right of action by creditors to discover their rights to pursue causes of action as may have exited at state law," requiring the Court to toll any state law cause of actions under W. Va. Code § 55-2-17 (Dkt. No. 86

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

In addition, Sheehan has failed to establish that the debtor, AGS, was "insolvent" at the time of the transfer. AGS is presumed to be insolvent from 90 days before Saoud filed the bankruptcy petition, but the Court has already calculated that the transfers occurred much earlier than that. 11 U.S.C. § 547(f). Sheehan has attached numerous tax documents to his motion, but has failed to point to any that support the conclusion AGS was insolvent when the transfers were made.[24]

Sheehan has failed to meet his burden of establishing that no material facts are in dispute regarding his attempt to avoid transfers made by the defendants. The Court therefore **DENIES** summary judgment to Sheehan as to **Count II** of his amended complaint. Celotex, 477 U.S. at 323, 106 S.Ct. at 2553.

### 3. Count III: The WVUFTA

In Count III, Sheehan alleges that "[t]he acts described above constituted a conspiracy to violate [the WVUFTA]," and are

---

at 8). Of course, this defense is applicable to Sheehan's cause of action under the WVUFTA, but it would not apply to the federal bankruptcy statute.

[24] This is not surprising, considering that Sheehan does not even discuss the elements of 11 U.S.C. § 547.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART
## AND DENYING IN PART DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

actionable by him as Trustee pursuant to his powers under 11 U.S.C. § 544. Yet again, the Court is left to speculate about the "acts" on which Sheehan relies, but will assume, for purposes of the motion, that he is referring to the following four transfers: (1) Saoud's transfer of his interest in CWVD to Scott on August 26, 2005 (Dkt. No. 86 at 4); (2) Saoud's transfer of AGS to Daniel for $1 million on March 31, 2006 (<u>Id.</u> at 4-5); (3) Daniel's transfer of a laboratory from AGS to CWVD for $1 million on April 3, 2006 (<u>Id.</u> at 5); and (4) Saoud's transfer of real estate owned by AGS on March 18, 2005 (<u>Id.</u> at 4).

The WVUFTA's operations are very similar to those of the federal bankruptcy statute in that it allows a creditor to avoid a transfer or obligation made by a debtor under certain circumstances. W. Va. Code 40-1A-7. The statute contains two prongs, under the first of which, a transfer or obligation may be fraudulent as to a creditor if the debtor made the transfer or incurred the obligation "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor." W. Va. Code 40-1A-4(a)(1). Alternatively, under the second prong, a debtor's transfer or

44

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

obligation may be fraudulent as to the creditor if it made the

transfer or incurred the obligation

> [w]ithout receiving a reasonably equivalent value in
> exchange for the transfer or obligation and the debtor:
>> (i) Was engaged or was about to engage in a
>> business or a transaction for which the remaining
>> assets of the debtor were unreasonably small in
>> relation to the business or transaction; or
>> (ii) Intended to incur, or believed or reasonably
>> should have believed that he (or she) would incur,
>> debts beyond his (or her) ability to pay as they
>> became due.

W. Va. Code 40-1A-4(a)(2).

The first prong requires the creditor to prove the debtor's

actual intent.   In determining actual intent, courts consider a

number of factors.   These include whether:

> (1) [t]he transfer or obligation was to an insider;
> (2) [t]he debtor retained possession or control of the
> property transferred after the transfer;
> (3) [t]he transfer or obligation was disclosed or
> concealed;
> (4) [b]efore the transfer was made or obligation was
> incurred, the debtor had been sued or threatened with
> suit;
> (5) [t]he transfer was of substantially all the debtor's
> assets;
> (6) [t]he debtor absconded;
> (7) [t]he debtor removed or concealed assets;
> (8) [t]he value of the consideration received by the
> debtor was reasonably equivalent to the value of the
> asset transferred or the amount of the obligation
> incurred;

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

(9) [t]he debtor was insolvent or became insolvent shortly after the transfer was made or the amount of the obligation incurred;
(10) [t]he transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) [t]he debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.
W. Va. Code 40-1A-4(b)(1)-(11).

A creditor must bring suit to enforce the provisions of W. Va. Code 40-1A-4(a)(1)-(2) within "four years after the transfer was made or the obligation incurred, or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." W. Va. Code 40-1A-9.

Sheehan filed this lawsuit on October 13, 2011 (Dkt. No. 3), thus making October 13, 2007 the latest date on which the transfers could have occurred. The four transfers, however, occurred on dates ranging from March 18, 2005, at the earliest, to March 31, 2006, at the latest.

Saoud has interposed the statute of limitations as a defense to Sheehan's allegations. (Dkt. No. 88 at 7). Sheehan, however, asserts that the statute of limitations should be tolled because Saoud "concealed and obstructed the right of action by creditors." (Dkt. No. 86 at 9). He suggests that the tolling period should

46

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)

---

continue until November 10, 2010, the date on which the bankruptcy court determined it had jurisdiction, because Saoud misrepresented his status as AGS' representative and caused much delay and confusion concerning whether AGS' petition was properly filed. <u>Id.</u>

If this were true, Sheehan's suit, filed on October 13, 2011, was properly brought within the one-year limitation period in W. Va. Code 40-1A-9. <u>See</u> Dkt. No. 91 at 5-6 (discussing Saoud's obstruction of the bankruptcy proceedings, but not citing to any authority). At this time, however, the evidence is insufficient for the Court to conclusively determine whether the statute is tolled.

Moreover, it bears repeating that, in his brief, Sheehan failed to establish that no material facts are in dispute, or that he is entitled to judgment as a matter of law. Factual questions to be determined at trial on the relevant issues include: (1) whether Saoud actually intended to hinder, delay, or defraud creditors; (2) whether the amounts received by AGS were "reasonably equivalent value"; (3) whether AGS' assets "were unreasonably small in relation to the business" at the time the transfers were made; and (4) whether Saoud intended to incur, or should have known that he

47

**MEMORANDUM OPINION AND ORDER GRANTING IN PART**
**AND DENYING IN PART DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

would incur, debts beyond AGS' ability to pay. W. Va. Code § 40-1A-4. See Dkt. No. 91 at 2-3 (discussing the transfers between Saoud and Daniel, and stating that the meaning of the transfer is disputed, and vaguely mentioning "still other asset transfers"); Id. at 10 (discussing that distributions are fraudulent transfers, but failing to cite to the record); Dkt. No. 99 at 4 (stating that liability under the WVUFTA "is clear here" without stating facts or citing to the record). See Celotex, 477 U.S. at 323, 106 S.Ct. at 2553 (describing the moving party's initial burden on summary judgment). Based on Sheehan's failure to meet his evidentiary burden as to these issues, the Court **DENIES** his motion for summary judgment as to **Count III**.

### 4. Count IV: Civil Conspiracy

Count IV of Sheehan's amended complaint alleges that Saoud, Daniel, and Scott conspired to violate the WVUFTA in violation of principles of West Virginia common law (Dkt. No. 86 at 10; Dkt. No. 91 at 8).[25] In resisting Sheehan's motion for summary judgment,

---

[25] As noted earlier, Daniel was dismissed in 2012, and the Court has already granted Scott's motion for summary judgment as to Count IV.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

Saoud argues that this count is repetitive of Count III, and does not state a separate cause of action (Dkt. No. 98 at 3). Alternatively, he argues that, because "allegations of fraud necessarily rest on intent of the parties," this is a question of material fact for a jury. <u>Id.</u>

As discussed in Section III.A.2 above, a violation of the WVUFTA does not sound in tort as is required to establish a civil conspiracy claim under West Virginia law. Therefore, Sheehan has failed to plead adequately the claim of civil conspiracy alleged in Count IV of the amended complaint, and the Court **DENIES** his motion for summary judgment as to that Count.

### IV. CONCLUSION

For the reasons discussed, the Court **GRANTS IN PART** and **DENIES IN PART** Scott's motion for summary judgment, and **DENIES** Sheehan's motion for summary judgment. Specifically, it:

- **DENIES** Scott's motion as to **Counts II and III** of the amended complaint;

- **GRANTS** Scott's motion as to **Count IV** of the amended complaint;

- **DISMISSES Count V** as moot;

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

- **DENIES** Scott's motion as to **Counts I and II** of Saoud's crossclaim; and,

- **DENIES** Sheehan's motion as to **Counts II, III, and IV.**

It further **FINDS** that the following issues are ripe for trial:

1.  Whether CWVD is liable to AGS for the remaining purchase price of $634,159.00, stemming from the April 2006 sale of AGS' laboratory to CWVD (Count I);

2.  Whether the agreements involving Saoud, Daniel, and Scott were voidable as fraudulent transfers under 11 U.S.C. § 547 (Count II);

3.  Whether the agreements involving Saoud, Daniel, and Scott were voidable as fraudulent transfers under W. Va. Code § 40-1A-1, *et seq.* (Count III);

4.  Whether Saoud violated 18 U.S.C. § 1962, and, if so, whether Sheehan is entitled to treble damages and attorneys' fees under 18 U.S.C. § 1964(c) (Count VI);

5.  Whether, given the Court's ruling that a violation of the WVUFTA does not sound in tort, Count IV should be dismissed as a matter of law; and,

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 89) AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 91)**

---

6.  Whether Sheehan is entitled to damages in the amount of
$1,136,226.64,[26] including real estate sold by AGS to
MedStar, $250,000 on the sale of AGS' laboratory to CWVD,
$409,032 on the distributions to Daniel, $22,000 in
return of capital, and sums equal to the value of assets
removed from AGS when it was sold to Daniel.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order
to counsel of record.

DATED: January 28, 2015.

/s/ Irene M. Keeley

IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

---

[26] Sheehan only seeks damages to the extent necessary to
reimburse creditors of AGS because Saoud is the true owner, and, as
such, any return obtained by Sheehan in excess of the amount
necessary to pay creditors would return to Saoud (Dkt. No. 91 at
10-11).