IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MARTIN P. SHEEHAN, Trustee of
the Bankruptcy Estate of AGS, Inc.,**

    **Plaintiff,**

v.  //   CIVIL ACTION NO. 1:11CV163
                              (Judge Keeley)

**ALLEN G. SAOUD, FRED D. SCOTT,
WEST VIRGINIA DERMATOLOGY
ASSOCIATES, INC., and CENTRAL
WEST VIRGINIA DERMATOLOGY
ASSOCIATES, INC.,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT FRED SCOTT'S
MOTION TO ALTER OR AMEND ORDER [DKT. NO. 104], AND PARTIALLY
AMENDING EARLIER MEMORANDUM OPINION AND ORDER [DKT. NO. 103] TO
DISMISS SAOUD'S CROSSCLAIM AGAINST SCOTT WITH PREJUDICE**

**I. Procedural Background**

On January 28, 2015, the Court entered a Memorandum Opinion and Order that denied in part and granted in part the motion for summary judgment filed by the defendant, Fred Scott ("Scott") (Dkt. No. 103). As an integral part of that opinion, the Court recounted that Scott had not been adjudged a "victim" in the related criminal case of the co-defendant, Allen G. Saoud ("Saoud"). Id. at 16.

On February 9, 2015, Scott filed a motion under Fed. R. Civ. Pro. 59(e) to alter or amend the Memorandum Opinion and Order, arguing that, at Saoud's sentencing, pursuant to the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, the Court found that Scott was a victim of Saoud's criminal conduct. Based on that,

**SHEEHAN V. SAOUD**                                              **1:11CV163**

**ORDER GRANTING DEFENDANT FRED SCOTT'S MOTION TO ALTER
OR AMEND ORDER [DKT. NO. 104] AND PARTIALLY AMENDING MEMORANDUM
OPINION AND ORDER [DKT. NO. 103]**

Scott contends that he is entitled to summary judgment as to Saoud's crossclaim against him (Dkt. No. 104).

Scott styled his motion as one under Rule 59(e). As co-defendant Saoud argues, however, Rule 59(e) is not the proper vehicle to correct its error, because its Memorandum Opinion and Order denying Scott's motion for summary judgment was not an order of final judgment. Therefore, the Court **CONSTRUES** Scott's motion as one under Rule 60. For the reasons that follow, the Court confesses its error regarding Scott's status as a victim, and **GRANTS** Scott's motion to amend or alter, but does so under Fed. R. Civ. Pro. 60(b)(1) (Dkt. No. 104).[1]

## II. Discussion of Law

Federal Rule of Civil Procedure 60(b)(1) allows the Court to relieve a party from a final judgment, order, or proceedings for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. Pro. 60(b)(1). See Parks v. U.S. Life and Credit Corp, 677 F.2d 838, 839-40 (11th Cir. 1982) ("The 'mistakes' of judges may be remedied under [Rule 60(b)(1)]."). A movant under Rule 60(b) must

---

[1] This decision only affects Scott's motion for summary judgment as to Saoud's crossclaim; the Court's decision as to Scott's motion for summary judgment as to the amended complaint, and as to Sheehan's motion for summary judgment still stands.

**ORDER GRANTING DEFENDANT FRED SCOTT'S MOTION TO ALTER
OR AMEND ORDER [DKT. NO. 104] AND PARTIALLY AMENDING MEMORANDUM
OPINION AND ORDER [DKT. NO. 103]**

---

"have a meritorious claim or defense and the opposing party must not be unfairly prejudiced by having the judgment set aside." Aikens v. Ingram, 652 F.3d 496, 501 (4th Cir. 2011). Finally, a motion brought under Rule 60(b) must be filed within a "reasonable time," defined as "no more than a year after entry of the judgment or order or date of the proceeding." Fed. R. Civ. Pro. 60(c)(1).[2]

The Court incorporates the facts and procedural history recounted in its earlier Memorandum Opinion and Order, but adds one key fact (Dkt. No. 103 at 2-10). Following Saoud's conviction and during his sentencing hearing, the Court found that Scott was a victim of Saoud's criminal scheme entitled to restitution (Sentencing Transcript at 111). "The basis for the decision that Dr. Scott is a victim is the decision of the jury on the count of the offense, which is the count of conviction on which Dr. Scott rests his right to restitution. That's already been decided by the jury." Id. at 111. Consequently, the Court awarded Scott, as restitution, $92,603.00 in attorneys' fees. Id. at 113.

---

[2] The Court entered its Memorandum Opinion and Order on January 28, 2015 (Dkt. No. 103) and Scott filed his motion to amend or correct on February 9, 2015 (Dkt. No. 104). Scott's motion was timely. Fed. R. Civ. Pro. 60(c)(1).

**ORDER GRANTING DEFENDANT FRED SCOTT'S MOTION TO ALTER
OR AMEND ORDER [DKT. NO. 104] AND PARTIALLY AMENDING MEMORANDUM
OPINION AND ORDER [DKT. NO. 103]**

**A.   Scott's Motion for Summary Judgment as to Saoud's Counterclaim**

In his motion to alter or amend, Scott argues that, because he was a victim of Saoud's fraudulent scheme, he is entitled to summary judgment on Saoud's crossclaim against him (Dkt. No. 104). The Court agrees. In his crossclaim, Saoud seeks damages of $1,600,000 from Scott stemming from the purported contract between Saoud and CWVD (Dkt. No. 88 at 7). Saoud claims that Scott "was to begin making payments starting March 1, 2006," but "failed to make any payment on the note as agreed" and "failed to use best efforts in keeping the corporation functioning properly and syphoned off cash for his own use rather than paying defendant Saoud as provided in the agreement." Id. Saoud also alleges that Scott never intended to repay him. Id. His crossclaim asserts claims for breach of contract and breach of the duty of good faith and fair dealing. Id. at 8-9.

According to Scott, Saoud is estopped from arguing Scott breached any contract because the jury in Saoud's criminal case determined that contract to be fraudulent (Dkt. No. 104 at 6-7). To rule otherwise, he argues, would create a situation where he, the victim of Saoud's criminal scheme, could be forced to pay consideration for a sale that has been adjudicated a sham. Id.

**ORDER GRANTING DEFENDANT FRED SCOTT'S MOTION TO ALTER
OR AMEND ORDER [DKT. NO. 104] AND PARTIALLY AMENDING MEMORANDUM
OPINION AND ORDER [DKT. NO. 103]**

A party seeking to rely on collateral estoppel must establish five elements. These include: (1) that the issue previously decided is identical to the issue in the current action; (2) that the issue was actually determined in the previous proceeding; (3) that the determination of the issue was "a critical and necessary part of the decision in the prior proceeding; (4) that the prior judgment is final and valid;" and, "(5) that the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue" in the prior case. Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir. 2006) (internal citations omitted).

When an issue is decided in a criminal action and collateral estoppel is asserted in a later civil action, a court must ask "whether the issue for which estoppel is sought was 'distinctly put in issue and directly determined' in the criminal action." Wolfson v. Baker, 623 F.2d 1074, 1078 (5th Cir. 1980) (quoting Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 569, 71 S.Ct. 408, 414 (1951)). When a criminal conviction is based on a guilty verdict, "'issues which were essential to the verdict must be regarded as having been determined by the judgment.'" Id. The Court agrees

**SHEEHAN V. SAOUD**                                            **1:11CV163**

**ORDER GRANTING DEFENDANT FRED SCOTT'S MOTION TO ALTER
OR AMEND ORDER [DKT. NO. 104] AND PARTIALLY AMENDING MEMORANDUM
OPINION AND ORDER [DKT. NO. 103]**

with Scott that Saoud's criminal judgment, including the order of restitution to Scott, is valid and final. Berman v. United States, 302 U.S. 211, 212, 58 S.Ct. 164, 166 (1937) ("Final judgment in a criminal case means sentence.  The sentence is the judgment.").

Additionally, Scott's liability on the contract at issue was determined by the Court as an integral and necessary part of its judgment regarding the restitution owed by Saoud.  Generally, when a criminal conviction is based on a guilty verdict, "'issues which were essential to the verdict must be regarded as having been determined by the judgment.'" Wolfson, 623 F.2d at 1078 (quoting Emich Motors Corp., 340 U.S. at 569, 71 S.Ct. at 414).

In Saoud's criminal case, the jury convicted Saoud of five counts of health care fraud (Case No. 1:12CR113, Dkt. No. 115).  It is therefore beyond debate that, on each of the five counts, the government proved beyond a reasonable doubt that Saoud "knowingly and willfully" executed, or attempted to execute, a scheme or artifice (1) "to defraud any health care benefit program," or (2) to obtain "by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit

**SHEEHAN V. SAOUD**                                           **1:11CV163**

**ORDER GRANTING DEFENDANT FRED SCOTT'S MOTION TO ALTER
OR AMEND ORDER [DKT. NO. 104] AND PARTIALLY AMENDING MEMORANDUM
OPINION AND ORDER [DKT. NO. 103]**

program," in connection with either the delivery of or payment for health care benefits.  18 U.S.C. § 1347.

Inherent in the five counts of conviction are the following facts: (1) that Saoud asked Scott to sign a document containing false and misleading statements about CWVD's financial obligations to Saoud and AGS, and Saoud's financial and managerial interests in CWVD and AGS; (2) that Saoud executed a purchase agreement to sell CWVD to Georgia Daniel; (3) that Saoud executed a purchase agreement in which Dr. Peasak agreed to purchase CWVD from Daniel; (4) that Saoud signed an affidavit making various representations about AGS' operations and records, and indicating that he was President; and, (5) that Saoud falsely stated that he was not an officer of AGS and did not have a relationship with CWVD in a letter to the Internal Revenue Service (Case No. 1:12CR113, Dkt. No. 56 at 7).

In the second superseding indictment, the government additionally charged that, as part of the scheme in Counts One through Five, (1) Saoud transferred ownership of CWVD to Scott for $ 1.6 million, but that Saoud did not receive any payment for CWVD; (2) all of AGS' staff and patients switched over to CWVD after the "sale"; (3) Saoud continued to actively participate in the

**ORDER GRANTING DEFENDANT FRED SCOTT'S MOTION TO ALTER
OR AMEND ORDER [DKT. NO. 104] AND PARTIALLY AMENDING MEMORANDUM
OPINION AND ORDER [DKT. NO. 103]**

management and administration of CWVD after the "sale"; (4) Saoud continued to receive contractual benefits and income from CWVD after the "sale"; (5) Saoud engaged in a sham sale of AGS to Daniel, a nurse practitioner, for $ 1 million; and (6) that AGS and CWVD received approximately $ 2 million in Medicare and Medicaid reimbursements between September 2005 and October 2010 (Case No. 1:12CR113, Dkt. No. 56 at 4-6). The jury convicted Saoud on all five counts, each of which included as an essential element the above-described "scheme or artifice." 18 U.S.C. § 1347.

At sentencing, the United States identified Scott as a "victim" of Saoud's health care fraud scheme, and sought an order of restitution on his behalf (Case No. 1:12CR113, Dkt. No. 149). United States v. Freeman, 741 F.3d 426, 434-35 (4th Cir. 2014) (victims must be victims of the offense of conviction). Based on the jury's verdict and the government's argument, the Court concluded that Scott was a victim of Saoud's scheme and entitled to restitution. In doing so, it necessarily found from the jury's verdict that Saoud's acts were "either conduct underlying an element of the offense of conviction, or an act taken in furtherance of a scheme, conspiracy, or pattern of criminal activity that is specifically included as an element of the offense

8

**SHEEHAN V. SAOUD**                                                1:11CV163

**ORDER GRANTING DEFENDANT FRED SCOTT'S MOTION TO ALTER
OR AMEND ORDER [DKT. NO. 104] AND PARTIALLY AMENDING MEMORANDUM
OPINION AND ORDER [DKT. NO. 103]**

of conviction." United States v. Blake, 81 F.3d 498, 506 (4th Cir. 1996).  Clearly, the conclusion that Scott was a victim of Saoud's "scheme or artifice" entitled to restitution was a matter directly determined in the criminal action.  Wolfson, 623 F.2d at 1078.

The only element of collateral estoppel remaining for analysis is whether Saoud had a full and fair opportunity to litigate his claims against Scott in his criminal case.  Saoud was on trial for the crimes described in Counts One through Five, including his purported "sale" of CWVD to Scott, now the subject of his cross claim.  He pleaded not guilty to those counts, and put on a vigorous defense at trial.  He therefore not only had a full and fair opportunity to litigate the legitimacy of the contract with Scott, he also chose to do so.

Concluding that all five elements of collateral estoppel have been met, the Court **AMENDS Part III.B.** of its Memorandum Opinion and Order (Dkt. No. 103), **GRANTS** Scott's motion for summary judgment as to Saoud's crossclaim, and **DISMISSES** the crossclaim with prejudice.

**SHEEHAN V. SAOUD**  1:11CV163

**ORDER GRANTING DEFENDANT FRED SCOTT'S MOTION TO ALTER
OR AMEND ORDER [DKT. NO. 104] AND PARTIALLY AMENDING MEMORANDUM
OPINION AND ORDER [DKT. NO. 103]**

### B. Scott's Motion for Summary Judgment as to Sheehan's Amended Complaint

Although Scott's motion to alter or amend does not seek to revisit the Court's conclusion denying in part and granting in part his motion for summary judgment as to Sheehan's amended complaint, the Court finds it appropriate to clarify the record on this issue (Dkt. No. 104 at 7). Scott sought summary judgment on all the claims alleged against him in Counts II, III, and IV of the amended complaint (Dkt. No. 103 at 12).[3] The Court has granted his motion as to Count IV, having ruled in Part III.A.2. of its Memorandum Opinion and Order that Count IV failed as a matter of law. Id. as 24. That decision remains unchanged.

As to Count III, the Court rejected Scott's collateral estoppel argument, finding "a question of material fact concerning whether Scott was a participant in the fraudulent transfers that dissipated AGS' assets, as Sheehan contends, or whether, as Scott assert[ed], he was victim of Saoud's criminal conduct." Id. at 15. The Court's error regarding Scott's status as victim of Saoud's criminal conduct does not change this conclusion. The party against whom collateral estoppel is asserted must have had a full

---

[3] Sheehan has abandoned Count II (Dkt. No. 122 at 21).

**SHEEHAN V. SAOUD**                                                1:11CV163

**ORDER GRANTING DEFENDANT FRED SCOTT'S MOTION TO ALTER
OR AMEND ORDER [DKT. NO. 104] AND PARTIALLY AMENDING MEMORANDUM
OPINION AND ORDER [DKT. NO. 103]**

and fair opportunity to litigate the issue in a prior case. Collins, 468 F.3d at 217. This is so even if an issue is decided in a criminal action and collateral estoppel is asserted in a later civil action. See Wolfson, 623 F.2d at 1078-1080. As the Court has already determined, AGS was not a party to Saoud's criminal case, and thus did not have a full and fair opportunity to litigate these issues (Dkt. No. 103 at 19-20).

Notably, collateral estoppel was the only applicable argument Scott mounted in his summary judgment motion. Given the Court's recognition that he was deemed a victim of Saoud's criminal conduct, it is unclear whether material issues of fact remain as to Scott's liability to Sheehan on Count III.

In conclusion, the Court:

1. **GRANTS** Scott's motion to alter or amend the memorandum opinion and order (Dkt. No. 104); and,

2. **AMENDS** Part III.B. of its memorandum opinion and order (Dkt. No. 103), **GRANTS** Scott's motion for summary judgment as to Saoud's crossclaim, and **DISMISSES** that crossclaim **WITH PREJUDICE.**

It is so **ORDERED.**

**SHEEHAN V. SAOUD**  1:11CV163

**ORDER GRANTING DEFENDANT FRED SCOTT'S MOTION TO ALTER
OR AMEND ORDER [DKT. NO. 104] AND PARTIALLY AMENDING MEMORANDUM
OPINION AND ORDER [DKT. NO. 103]**

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: February 18, 2015.

                                      /s/ Irene M. Keeley

                                      IRENE M. KEELEY
                                      UNITED STATES DISTRICT JUDGE